**SO ORDERED.**

**SIGNED this 6th day of March, 2024.**



_____
Mitchell L. Herren
United States Bankruptcy Judge

_____

**DESIGNATED FOR ONLINE PUBLICATION ONLY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| KENDALL ANNEMARIE HALL, ) | Case No. 23-11129 |
| ) | Chapter 13 |
| Debtor. ) | |
| ) | |

**ORDER ON DEBTOR'S MOTION FOR TEMPORARY INJUNCTION
AND TO ENFORCE AUTOMATIC STAY AND FOR
ORDER TO SHOW CAUSE AND SANCTIONS (Doc. 36)**

This case presents the oft-repeated situation when a divorce case and bankruptcy case collide. In the divorce, prior to the bankruptcy filing the state court awarded the marital home to debtor and ordered her to make an equalization payment to her former spouse to fairly divide the marital estate. In bankruptcy, such an obligation would generally fall under 11 U.S.C. § 523(a)(15) as a debt incurred in the course of a divorce and owed to a former spouse, but would not be a domestic support obligation ("DSO") under § 523(a)(5).

1

The difference is significant in a chapter 13 bankruptcy. Under § 1328(a), a § 523(a)(15) debt is not excepted from the chapter 13 debtor's discharge, but a § 523(a)(5) DSO is excepted.[1] After receiving notice of debtor's chapter 13 bankruptcy filing, the former spouse filed motions in the divorce case under K.S.A. 60-260(b) to set aside or modify the equalization payment judgment and recharacterize it as a nondischargeable DSO. That action exposed another bankruptcy minefield – the automatic stay under § 362 – and prompted debtor to file a motion asking this Court to enforce the automatic stay, to find the former spouse's actions violated the stay, and to award debtor damages and fees under § 362(k). It is the debtor's stay-violation motion that is before this Court for determination.

On November 15, 2023, Debtor filed for bankruptcy relief under Chapter 13 of the Bankruptcy Code, triggering the bankruptcy automatic stay under 11 U.S.C. § 362(a). On February 6, 2024, the Debtor filed the above *Motion for Temporary Injunction and to Enforce Automatic Stay and for Order to Show Cause and Sanctions* (the "Motion"), after creditor Matthew Pray, debtor's former spouse, filed his Motion to Set Aside Judgment and for Attorney Fees and Sanctions under K.S.A. 60-260(b) ("Pray Motion I," *doc. 36-1*) in the parties' state court divorce case on January 29, 2024, and an Amended Motion to Set Aside Judgment on February 2 ("Pray Motion II," doc. 36-3). The judgment that is the subject of Pray Motion II is an Equalization Payment Judgment entered by the state divorce court on

---

[1] A DSO is defined in the Bankruptcy Code. *See* 11 U.S.C. § 101(14A).

**2**

September 13, 2023 in the amount of $47,481.41, ordering Debtor to pay that balance to Pray within 180 days to "equalize the marital estate." *Doc. 42, Ex. E Journal Entry of Equalization Payment.*[2]

Pray filed in this Court a Response and Amended Response to debtor's Motion on February 13, 2024. *Doc 42 and 43.* This Court granted Debtor's request for an expedited hearing held on February 29, 2024.[3] The Court admitted into evidence as Exhibit 1 the state court's Findings of Fact and Conclusion of Law entered December 8, 2022 in the divorce action and all other attachments to the parties' filings (*Doc. 36, 42 and 43)* without objection.

At the hearing, the Court first addressed preliminary matters regarding the parties' filings. The injunctive relief sought by debtor in the Motion must be brought as an adversary proceeding in bankruptcy pursuant to Rule 7001(7). Debtor filed that adversary proceeding with this Court on February 6, 2024 and served Pray with the complaint; Pray's answer is due March 8.[4] This Order will not address injunctive relief. The Motion's reference to an Order to Show Cause and Sanctions appears similar to a motion for contempt, but the motion is not pled as

---

[2] Pray's Motion requests relief from the "Ruling on Equalization Payment" filed February 2, 2023. *Doc. 36-1, p. 6, ¶ 20.* That Ruling awarded Pray an equalization payment of $158,698. *See Doc. 36-1, pp. 21-22, Ex. B.* Pray's Amended Motion filed February 2, 2024 requests relief from the February 2, 2023 Equalization Ruling, as amended on September 13, 2023 by the Journal Entry of Equalization Payment. *Doc. 36-3, p. 1, 5 at ¶ 17.* The September 13 Journal Entry, after sale of the marital home, reduced the equalization payment to $87,184.41 and after applying net sale proceeds of $39,703 paid to Pray, left a balance of $47,481.41 owed on the equalization payment to equalize the marital estate. *See Doc. 36-3, pp, 43-46, Ex. E.*

[3] Debtor Kendall Hall appeared in person and by her bankruptcy attorney Colin N. Gotham. Creditor Matthew Pray appeared in person and by his domestic attorney Matthew J. Olson. Karin Amyx appeared for Carl B. Davis, the Chapter 13 Trustee.

[4] *Hall v. Pray (In re Hall),* Adv. No. 24-5003 (Bankr. D. Kan.).

3

such. The matter addressed by this Order is limited to whether the automatic stay was in effect and whether the filing of Pray Motions I and II violated the stay.

With respect to Pray Motion I, he sought relief from the Equalization Payment Judgment under K.S.A. 60-260(b)(3) [fraud] and (b)(6) [any other reason justifying relief].[5] Pray Motion II continued to seek relief under subsections (b)(3) or (b)(6), and contained vague allegations of fraud, misrepresentations or misconduct by debtor in filing this bankruptcy case.[6] The Court cautioned Pray's counsel that debtor's mere exercise of her right to seek bankruptcy relief is not in itself a basis for fraud or bad faith on the part of debtor.[7]

When the Court inquired about the factual basis for the allegations of fraud or misconduct, counsel for Pray conceded that he had no good faith basis to support the conclusory allegations of fraud or misconduct. Accordingly, this Court will for now disregard any statements regarding misconduct, misrepresentations, or fraud alleged against debtor in filing this bankruptcy. And finally, despite representing that Pray "is concurrently requesting a lift of the automatic stay in the bankruptcy," Pray has filed no motion for relief from the automatic stay in this bankruptcy case.[8]

---

[5] Doc. 36-1, p.6, ¶s 20 and 21, and p. 14-15.
[6] Doc. 36-3, p. 6, ¶s 20-21, p. 7 at ¶s 25-26, p. 9, ¶ 32, p. 12, ¶ 33.
[7] *See In re Lanham,* 346 B.R. 211, 219 (Bankr. D. Colo. 2006) (Fact that debtor seeks to take advantage of broader discharge provisions of Chapter 13 is not, in and of itself, a reflection of debtor's bad faith); *In re Fulmer,* 535 B.R. 854 (Bankr. M.D. Ala. 2015) (chapter 7 debtor's motivation in converting case to chapter 13 to discharge her obligation to former spouse did not amount to bad faith); *In re Young,* 237 F.3d 1168, 1178 at n. 9 (10th Cir. 2001) ( conversion from chapter 7 to chapter 13 to deal with nondischargeable judgment debt for punitive damages was not conclusive evidence that debtor acted in bad faith).
[8] *See* Doc. 36-3, p. 13, ¶40. A request for relief from the automatic stay is made by motion and requires the movant to give reasonable notice and opportunity for hearing on the motion. *See* Fed. R. Bankr. P. 4001(a) and 9014.

4

Findings of Fact

Debtor commenced a divorce action in Butler County District Court in May of 2022. Her marriage to Pray was dissolved early on and the divorce court moved to child support and property division issues. After hearings in October of 2022, the divorce court awarded the marital home to debtor (valued at $675,000 less the mortgage, for which debtor was solely responsible and would hold Pray harmless therefrom) and an equalization payment to Pray was contemplated in some amount to equalize the marital estate.[9] The parties engaged in litigation over the amount of that equalization payment. The divorce court initially set the equalization payment at $158,698 "as an equalization and/or cash equity payment."[10]

The debtor sought, more than once, to have the Equalization Payment reduced after debtor was unable to refinance the mortgage. On June 2, 2023 the parties entered into an Agreed Journal Entry under which Debtor and Pray agreed to sell the home to Christopher Stoneberger for a sale price of $600,000.[11] The sale netted proceeds of $39,703 (after payment of the mortgage) which debtor was ordered to pay Pray as a partial satisfaction of the equalization payment. The divorce court reduced the equalization payment from $158,698 to $87,184.41 and

---

[9] *See* Doc. 36-3, pp. 22-34, Ex. C Journal Entry of Judgment entered January 9, 2023 at ¶s 11-15. In that Journal Entry of Judgment, the amount of the equalization payment "in order to equalize the division of the assets and liabilities" was taken under advisement. Ex. C, ¶ 39. Pray was ordered to pay spousal support to debtor of $500 per month for a period of four months. Ex. C, ¶ 20. No award for spousal support was awarded to Pray, and his counsel stated at this Court's February 29 hearing that Pray did not seek or request spousal support from debtor. The Journal Entry also determined the parties were responsible for their own attorney fees and costs. Ex. C, ¶ 22.
[10] *See* Doc. 36-3, pp. 20-21, Ex. B Ruling on Equalization Payment entered February 2, 2023.
[11] *See* Doc. 36-3, pp. 35-42, Ex. D Agreed Journal Entry.

5

after application of the net sale proceeds, the balance of the equalization payment owed by debtor to Pray was $47,481.41 and journalized on September 13, 2023; it gave debtor 180 days to pay the same.[12]

Debtor filed this chapter 13 bankruptcy case on November 15, 2023, and scheduled Pray as an unsecured creditor for the equalization payment under the September 13, 2023 Journal Entry. The Court takes judicial notice of its docket report that indicates the Bankruptcy Noticing Center mailed on November 18, 2023 the Notice of Chapter 13 Bankruptcy Case by first class mail to all creditors listed in the bankruptcy, including creditor Pray.[13] Pray states that he received notice of debtor's chapter 13 bankruptcy case filing "on or about November 29, 2023."[14] Pray timely filed an unsecured proof of claim (No. 7-1) on January 3, 2024 for the remaining equalization payment—$47,481.41, and attached the September 13, 2023, Journal Entry of Equalization Payment. Debtor has filed an amended chapter 13 plan, but it has not yet been confirmed. Debtor's amended plan proposes to treat Pray's claim as an unsecured claim in the case.

On January 29, 2024, Pray filed Pray Motion I in the divorce case to set aside the Equalization Payment judgment and for attorney fees and sanctions. In it, Pray requests the divorce court to:

> a. . . . find that it was an oversight or inadvertent omission to leave out the standard bankruptcy language which would label the equalization payment as a domestic support obligation . . . [Pray] requests the court amend its Ruling by making the equalization payment a domestic support judgment that cannot be discharged in

---

[12] *See* Doc. 36-3, pp. 43-46, Ex. E Journal Entry of Equalization Payment.
[13] *See* Doc. 10.
[14] *Doc 36-3, p. 5, ¶ 19 and Ex. G.*

**6**

> bankruptcy; or
> b. . . . relieve [Pray] from the Ruling and award him spousal maintenance in the amount of the equalization payment awarded . . .; or
> c. . . . set aside the Ruling, if the bankruptcy court amends [sic] the automatic stay, and reconsider the division of property based on Petitioner's calculated filing of bankruptcy.[15]

On February 1, 2024 Debtor's bankruptcy counsel sent a letter to Pray's counsel asserting that Pray Motion I violated the automatic stay and demanded that it be withdrawn.[16] Pray declined to withdraw Pray Motion I; instead he filed Pray Motion II in the divorce case on February 2, 2024 to set aside the Equalization Payment Judgment under K.S.A. 60-260(b)(3) and (b)(6). In it, Pray requests the divorce court to:

> a. . . . relieve [Pray] from the Ruling and award him spousal maintenance in the amount of the equalization payment awarded in the Ruling . . .; or
> b. . . . set aside the Ruling, if the bankruptcy court amends [sic] the automatic stay, and reconsider the division of property based on Debtor's calculated filing of bankruptcy.[17]

Pray dropped his earlier request for attorney fees and sanctions. Pray Motion II asserts relief from the equalization payment to *modify* the same to spousal maintenance, because the equalization payment judgment lacked "protective provisions" and because the equalization payment will be discharged in debtor's bankruptcy.[18] Boiled down to its simplest terms, Pray seeks to modify or

---

[15] Doc. 36-1, p. 7, ¶ 25 and p. 9, ¶ 31
[16] Doc. 36-2.
[17] Doc. 36-3, p. 7, ¶ 25 and p. 8, ¶ 27.
[18] *Id. at* p. 8, ¶ 27; p. 13, ¶ 39. Pray further indicated his intentions in divorce court if he obtained stay relief from the bankruptcy court: "to redivide [the] property" and "liquidate assets awarded to [Debtor] to satisfy the debt still owed to [him]." *Id.* at p. 13, ¶s 40-41. As noted previously, Pray has never filed a motion for relief from the stay with the bankruptcy court.

7

recharacterize the equalization payment judgment to prevent its discharge.

Conclusions of Law

A.  Jurisdiction

The bankruptcy court and state court have concurrent jurisdiction to determine whether the automatic stay applies, but the bankruptcy court has the final word.[19] If a state court erroneously determines that the automatic stay does not apply in a case, it is in effect an improper modification of the automatic stay and renders the action in the nonbankruptcy proceeding *void ab initio.*[20] The bankruptcy court has exclusive jurisdiction to grant stay relief and to enforce the automatic stay.[21]

B. The Bankruptcy Automatic Stay, 11 U.S.C § 362

Under § 362(a), the filing of a bankruptcy petition "operates as a stay, applicable to all entities" of the types of conduct and actions listed in subsection (a). Those pertinent in this case are § 362(a):

> (1)   the commencement or continuation, including . . . other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . .
>
> (6)   any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

---

[19] *See In re Cole,* 552 B.R. 903 (Bankr. N.D. Ga. 2016); *In re Shrum,* 597 B.R. 845 (Bankr. E.D. Mich. 2019); *In re Zausner,* 638 B.R. 196 (Bankr. M.D. Fla. 2022); *In re Gandy,* 327 B.R. 796 (Bankr. S.D. Tex. 2005).
[20] *Kalb v. Feuerstein,* 308 U.S. 433, 438 (1940); *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372(10th Cir. 1990); *In re Franco,* 574 B.R. 730, 737 (Bankr. D. N.M. 2017); *In re Wagner,* 2019 WL 1995606, at *5 (Bankr. D. Kan. 2019).
[21] 28 U.S.C. § 157(b)(2)(G) (motions to terminate, annul, or modify the automatic stay is a "core" bankruptcy proceeding); *In re Wagner,* 2019 WL 1995606, at *5; *In re Toppin,* 637 B.R. 88, 104 (Bankr. E.D. Pa. 2021); *In re McClafferty,* 571 B.R. 267, 273-74 (Bankr. N.D. Ohio 2017).

8

Section 362(b) describes several exceptions, or exclusions, from the automatic stay. As applicable here, § 362(b)(2) does not stay "the commencement or continuation of a civil action or proceeding" to establish paternity, to establish or modify domestic support obligations, that concern child custody, domestic violence, or dissolution of the marriage. However, the parties in the divorce *are stayed* to the extent the proceeding "seeks to determine the division of property that is property of the estate."

Pray's motions seek to modify the equalization payment that was entered September 13, 2023, prior to the bankruptcy filing. The equalization payment was part of the state court's division of property. The equalization payment does just that—it equalizes the division of property between the parties to the divorce.[22] As such it is part of the division of property made by the divorce court and is subject to the automatic stay.[23] Pray has not sought stay relief to modify the Equalization Payment. Pray's counsel represented that Pray did not request spousal support during the divorce.

In addition, the Pray Motions are attempts to collect or recover the equalization payment that would otherwise be discharged under § 1328(a) to the extent the equalization payment is not paid under the terms of the debtor's chapter 13 plan. The mere re-labeling or recharacterizing of that debt as a support obligation

---

[22] *In re Okrepka,* 533 B.R. 327, 335 (Bankr. D. Kan. 2015) (determining whether the divorce court established the debt as a means of fairly dividing the parties' assets and liabilities; divorce court's use of the label "Equalization Payment" in the property division section was persuasive in that case).
[23] *Id.* (debtor's divorce obligation to make an equalization payment to creditor was a property settlement obligation under § 523(a)(15), not a domestic support obligation)

**9**

does not necessarily transform the debt to a nondischargeable DSO. The bankruptcy court is not bound by what label is placed on the debt by the divorce court.[24] Whether the equalization payment is excepted from discharge under 523(a)(5) is a matter of federal bankruptcy law made on a case-by-case basis.[25] It requires "a dual inquiry into both parties' intent and the substance of the obligation . . . the crucial issue is whether the obligation imposed by the divorce court has the purpose and effect of providing support for the spouse."[26] The Pray Motions violated subsections (a)(1) and (a)(6) of § 362.

    C. Pray's Violations of the Automatic Stay were Willful.

Pray's stay violations were not some technical violation where he lacked notice of debtor's bankruptcy filing. Instead, Pray knew of debtor's bankruptcy filing before filing the motions to modify the equalization payment judgment, and did so in an attempt to prevent discharge of the debt in debtor's chapter 13 bankruptcy. No showing of bad motive or intent on the part of Pray is required to find a willful violation. All that is required to be shown is that Pray knew of the automatic stay and intended the actions that constituted the violation.[27] Pray continued to pursue action related to the equalization payment in the divorce case after refusing to heed debtor's counsel's warning that Pray Motion I violated the

---

[24] *Id.* at 334.
[25] *Id.*
[26] The bankruptcy courts consider the following: the parties' shared intent *at the time of the divorce* (or the divorce court's intent if the parties litigated their divorce), the substance of the obligation, whether the purpose and effect of the obligation is to provide support to a spouse, a spouse's need for support, and what function the obligation is intended to serve. *Okrepka,* 533 B.R. at 334-35.
[27] *In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007) (specific intent is not required; the actor's good faith belief that the actions were permitted is irrelevant to finding a willful violation).

**10**

stay; he responded by filing Pray Motion II. The Court concludes that Pray knew of debtor's bankruptcy filing and the automatic stay[28] and intended his actions to modify the equalization payment and recharacterize it as a support obligation to prevent its discharge. Pray's stay violation was willful.

Conclusion

The automatic stay was in effect on and after November 15, 2023, the date that debtor filed her bankruptcy case. The automatic stay remains in place presently. Pray's Motions filed after debtor filed bankruptcy without seeking or obtaining stay relief from the Court to modify the Equalization Payment by recharacterizing it as a nondischargeable domestic support obligation willfully violated § 362(a)(1) and (a)(6). The debtor's motion to enforce the automatic stay is GRANTED. This matter will be continued to an evidentiary hearing **on March 27, 2024 at 1:30 p.m.** to consider the amount of damages and fees to be awarded to debtor under § 362(k)(1). Counsel for debtor shall provide a copy of this Order to the Divorce Court promptly after its entry by e-mailing the same to District Court Judge Satterfield.

### 

---

[28] The Notice of Chapter 13 Bankruptcy Case received by Pray, states: "The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors." The Notice goes on to describe potential consequences of violating the stay. *See* Doc. 9, p. 1.