**SO ORDERED.**

**SIGNED this 12th day of June, 2024.**



_____
Mitchell L. Herren
United States Bankruptcy Judge
_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>**KENDALL ANNEMARIE HALL**<br>*aka* Kendall Annemarie Pray<br>*fdba* Windy Fox Farm<br>*dba* Stone Fox Farm<br>                        Debtor. | Case No. 23-11129<br>Chapter 13 |

## ORDER GRANTING IN PART DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

A creditor who willfully violates the bankruptcy automatic stay may be liable for actual and punitive damages under 11 U.S.C. § 362(k)(1). The Court, having previously found that Debtor's former spouse willfully violated the automatic stay by filing, with notice of Debtor's chapter 13 bankruptcy and without obtaining stay relief, state court motions to modify or set aside a property equalization judgment entered in the parties' divorce case, held a separate evidentiary hearing on

damages.[1] Because the former spouse's actions were an effort to prevent discharge of the property equalization judgment in Debtor's bankruptcy and were willful and in reckless disregard of the Debtor's bankruptcy rights, the Court awards actual damages for Debtor's attorney's fees and lost income incurred as a result of the stay violation and punitive damages as set forth below.

I.    **Facts**

The facts are more fully set forth in the *Stay Violation Order*. However, the following is a brief recitation of the relevant facts.

Debtor filed her chapter 13 bankruptcy on November 15, 2023, listing her former spouse Matthew Pray as a creditor by virtue of a $47,481 property equalization payment awarded to Pray in the parties' divorce case. As a § 523(a)(15) debt, the property equalization judgment was dischargeable in Debtor's chapter 13 case.[2]

After receiving notice of the bankruptcy and without seeking stay relief, on January 29, 2024, Pray filed in the parties' state court divorce proceeding a motion to set aside judgment, seeking to modify the equalization judgment to include the "standard bankruptcy language which would label the equalization payment as a domestic support obligation" to prevent the payment from being discharged in Debtor's bankruptcy.[3] Debtor's counsel sent a letter, dated February 1, 2024, to Pray's attorneys informing them that the motion violated the automatic stay and

---

[1] Doc. 48, *Order on Debtor's Motion for Temporary Injunction and to Enforce Automatic Stay and for Order to Show Cause and Sanctions* (hereafter "*Stay Violation Order*").
[2] 11 U.S.C. § 1328(a)(2).
[3] Doc. 36-1, p. 7, ¶ 25, p. 8, ¶ 27.

2

requesting that it be withdrawn.[4] Despite the warning, Pray neither sought stay relief, nor withdrew the motion to set aside, but continued to pursue relief in state court, filing an amended motion to set aside the equalization judgment on February 2.[5] In the amended motion, Pray sought, *inter alia,* to have the divorce court set aside the equalization judgment and reconsider the division of property "based on Debtor's calculated filing of bankruptcy."[6] Pray further represented that he was "concurrently requesting" stay relief in the bankruptcy case. However, no stay relief motion was ever filed by Pray to authorize him to proceed with modification of the equalization judgment.

Pray's actions prompted Debtor to file a *Motion for Temporary Injunction and to Enforce Automatic Stay and for Order to Show Cause and Sanctions* (the "Motion") on February 6, 2024.[7] After an evidentiary hearing, the Court issued its Stay Violation Order finding that Pray violated the automatic stay by filing the state court motions and that his stay violations were not mere technical violations where he lacked notice of the bankruptcy, but were instead willful violations to prevent discharge of the equalization judgment.[8] The Court set the matter of

---

[4] Debtor's Ex. 1.2, p. 70.
[5] Debtor's Ex. 1.3, p. 71.
[6] Doc. 36-3, p. 7, ¶ 25.
[7] Doc. 36. The Court in its Stay Violation Order did not address injunctive relief as such a request for relief must be brought as an adversary proceeding under Fed. R. Bankr. P. 7001(7). Debtor filed the adversary proceeding (Adv. No. 24-5003) the same day as the Motion, but subsequent to the Court's Stay Violation Order, the parties stipulated to dismissal of the adversary proceeding and it has been closed. Thus, all that remains with respect to Pray's post-judgment motions to modify the equalization judgment is a determination of damages for the stay violation under § 362(k)(1).
[8] Doc. 48, p. 10.

3

damages to an evidentiary hearing to consider the amount of damages to be awarded to Debtor under § 362(k)(1).[9]

Prior to the evidentiary hearing, Debtor filed a Memorandum in which she argued for punitive damages in the amount of $10,000.[10] Pray filed a response asserting that no punitive damages were warranted under the law or facts.[11]

At the hearing on damages, the Court received testimony and exhibits from both parties, including Debtor's counsel's invoices itemizing time spent on the case and the resulting fees, and heard argument from both parties. At the conclusion of the hearing, the Court took the damages issue under advisement.

## II.     Jurisdiction

This Motion and the hearing on damages are related to a core proceeding to enforce the automatic stay under § 362(k)(1), which arises under title 11 over which this Court has subject matter jurisdiction.[12] Venue is also proper in this District.[13]

## III.    Analysis

Debtor argues that Pray's willful violation of the automatic stay warrants sanctions under § 362(k)(1) in the form of attorney's fees in the amount of $13,286.12, Debtor's lost income in the amount of $1,750, and expenses she incurred

---

[9] *Id.* at 11.
[10] Doc. 60.
[11] Doc. 74.
[12] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(G) and Amended Order of Reference, D. Kan. S.O. 13-1.
[13] 28 U.S.C. § 1409(a).

in the amount of $3,900. Debtor also asserts Pray's conduct rises to such an egregious level that punitive damages in the amount of $10,000 are warranted.[14]

Pray disputes the amount of fees requested as some of the fees, he argues, were incurred working on other matters, including the divorce, PFA (Protection From Abuse) proceedings, post-trial alleged stay violations, and the adversary proceeding that were not directly related to the stay violation proceedings. He also argues that punitive damages are not warranted because his actions were neither intentional nor egregious and he cannot afford to pay such a lofty amount.

As a preliminary matter, Debtor testified at the hearing about two incidents between Debtor and Pray that occurred *after* the Court issued its Stay Violation Order on March 6. Such incidents led to Debtor filing a PFA complaint in state court.[15] Debtor also asserts that Pray's actions during and around the time of the incidents may amount to further violations of the automatic stay. However, further alleged violations occurring after the Stay Violation Order are outside the scope of this damages order. If Debtor wishes to pursue sanctions for additional violations, she must file a new motion.

The Court will first address Debtor's request for actual damages, *i.e.*, attorney's fees, expenses, and lost income, and then discuss whether punitive damages are appropriate.

---

[14] Doc. 60, p. 2.
[15] Debtor's Ex. 6, p. 240.

5

## A. Actual Damages

Section 362(k)(1) authorizes an individual injured by any willful violation of the automatic stay to recover "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[16] The burden is on Debtor to establish, by a preponderance of the evidence, actual damages caused by a willful violation of the automatic stay.[17]

### 1. Lost Income and Expenses

Debtor, who runs a horse farm that provides horse training and horse-riding lessons, testified that she lost five days of work amounting to $1,750 in lost income (which would equate to $350 per day) and incurred $3,900 in expenses as she had to pay other employees to cover her daily barn chores so she could attend meetings and court hearings. Debtor appeared before this Court twice for hearings lasting less than one-half day (roughly equating to one full work-day), once for the hearing on the stay violation Motion and again for this evidentiary hearing on damages, and she appeared in the state court twice, once for the status hearing on Pray's motion (a hearing that also included an issue unrelated to Pray's motion), and again for the PFA proceeding. Because the PFA issues are outside the scope of this order and the other state court hearing required Debtor's presence for a matter unrelated to Pray's motion, the Court will not award lost income for attending those proceedings.

---

[16] 11 U.S.C. 362(k)(1).
[17] *In re Nelson,* 335 B.R. 740, 748 (Bankr. D. Kan. 2004); *see also Kline v. Deutsche Bank Nat. Trust Co. (In re Kline),* 472 B.R. 98, 103 (10th Cir. BAP 2012) ("[T]he debtor must establish by the preponderance of the evidence that a violation occurred, the violation was committed willfully, and the violation caused actual damages."); *Johnson v. Smith (In re Johnson),* 501 F.3d 1163, 1169-71 (10th Cir. 2007).

6

Similarly, the Court will not award lost income for any meetings Debtor and counsel had because Debtor could not identify any particular dates, nor does counsel's billed time as depicted in Exhibit 7, reflect any such meetings. Further, Debtor did not provide any substantiating evidence, *i.e.,* invoices or bank records, to support her claim of expenses. So, the Court will not award the $3,900 in expenses, nor the full amount requested in lost wages; it will instead award lost income in the amount of $350 for the two half days Debtor attended hearings related to this matter.

### 2. Attorney's Fees

The Court considers the reasonableness of Debtor's requested attorney's fees under the "adjusted lodestar approach" and 11 U.S.C. § 330(a).[18] Using this approach, the Court must first determine the reasonable compensation by multiplying the reasonable number of hours expended by the attorney's reasonable hourly rate.[19] It will then apply the § 330(a)(3) factors and the relevant *Johnson* factors to determine whether the lodestar amount should be increased or reduced.[20] The burden is on Debtor to show that the requested fees are reasonable.[21]

---

[18] *Karmi v. Atallah (In re Karmi)*, 638 B.R. 804, 817 n.23 (Bankr. D. Kan. 2022) ("To determine whether attorney fees were reasonably incurred for purposes of § 362(k), bankruptcy courts frequently apply the standards used to calculate reasonable attorney fees under § 330.").
[19] *Connolly v. Harris Tr. Co. of Cal. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1243 (10th Cir. 2002); *see also In re S-Tek 1, LLC*, No. 20-12241, 2023 WL 1787893, at *4 (Bankr. D.N.M. Feb. 6, 2023).
[20] *See also Mkt. Ctr. E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr. E. Retail Prop., Inc.)*, 730 F.3d 1239, 1246–47 (10th Cir. 2013) ("[T]his circuit has continued to consider the Johnson factors in addition to the § 330(a) factors in determining reasonable attorney's fees."); *In re S-Tek 1, LLC*, 2023 WL 1787893, at *4 (applying the 12 *Johnson* factors in addition to the factors in § 330(a)(3)) (referring to *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).
[21] *In re Nelson*, 335 B.R. at 748.

7

### a. Lodestar Calculation

According to Debtor's Exhibit 7, Debtor's counsel and staff billed a total of 47.3 hours at the following rates: Debtor's counsel of record charged $350 per hour, an associate attorney charged $275 per hour, and a paralegal charged $125 per hour[22] for a total of $13,286.12 in billed fees.[23]

Pray does not dispute the respective hourly rates. He does however claim that some of the billed work was not directly related to Pray's stay violation, but to other issues including the PFA, adversary proceeding, other potential violations of the automatic stay, and general matters concerning the Debtor's chapter 13 bankruptcy case. Fees sought for these other matters, Pray argues, should be excluded from the amount requested.

The Court agrees in part and will exclude $210 in fees that appear to have been billed for work on allegations of additional stay violations related to the PFA dispute.[24] The Court will not exclude the fees incurred on the adversary proceeding. The Court does not view that time to be duplicative or unnecessary as Debtor properly brought her motion for injunctive relief as an adversary complaint under Fed. R. Bankr. P. 7001(7). In summary, the allowed lodestar calculation is $13,076.12 ($13,286.12 – $210). The Court will now analyze the reasonableness of

---

[22] Debtor's Ex. 7, p. 244-45.
[23] This amount does not include the hours spent traveling to or appearing at this damages hearing. Debtor's counsel did not supplement the Exhibit 7 billings or provide updated billing invoices to account for the additional time.
[24] As the Court previously discussed, any new stay violations are outside the scope of this order and any work done on any additional violations will not be compensated by this Order.

8

counsel's fees under the § 330(a) and *Johnson* factors to determine whether to increase or decrease the lodestar calculation.

### b. Reasonableness of Fees under the § 330(a)(3) and *Johnson* Factors

Section 330(a)(3) requires the Court to consider "the nature, the extent, and the value of such services, taking into account all relevant factors," including:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered . . .
> (D whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.[25]

Even after the adoption of § 330(a), courts in the Tenth Circuit continue to consider the *Johnson* factors, in addition to the § 330(a) factors, to determine whether the requested fees are reasonable.[26] The relevant factors in this case are:

> (1) The time and labor required.
> (2) The novelty and difficulty of the questions.
> (3) The skill requisite to perform the legal service properly.
> (5) The customary fee.
> (6) Whether the fee is fixed or contingent.
> (8) The amount involved and the results obtained.
> (9) The experience, reputation, and ability of the attorneys.

---

[25] 11 U.S.C. § 330(a)(3).
[26] *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d at 1246–47.

9

### i. Time Spent on Services and *Johnson* Factors 1 and 2

Except as noted in the lodestar calculation section, the time and labor spent on services was reasonable considering the time required to research causes of action, draft various motions, and prepare for multiple hearings relating to this matter. Therefore, this factor does not warrant an adjustment.

### ii. Rate Charged and *Johnson* Factors Nos. 5 and 6

Debtor argues that counsel and staff's respective hourly rates are reasonable considering the value of similar services in the Kansas City Metro, which is where counsel is located. The Court agrees and finds counsel and staff's hourly rate to be reasonable, and this factor does not warrant an adjustment.

### iii. Whether the Services were Necessary to the Administration to the Estate and *Johnson* Factor No. 8

An element of "necessary" is whether the services benefited the estate.[27] The fees incurred for counsel and staff's work on the Motion and related hearings was necessary to protect the estate in accordance with the automatic stay under § 362. Therefore, this factor does not warrant an adjustment.

### iv. Whether Services were Performed Within a Reasonable Time Commensurate with the Complexity, Important and Nature of the Problem, Issue, or Task Addressed and *Johnson* Factor No. 3.

Pray argues that the time spent on Debtor's Memorandum was excessive considering the Memorandum is only three pages long. Yet, according to Debtor's

---

[27] *In re Reynolds*, 835 F. App'x 395, 399 (10th Cir. 2021) (question of whether services were beneficial must be determined before a reasonableness inquiry) (citing *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321, 1323 (10th Cir. 1993)).

10

Exhibit 7, counsel and staff billed only 2.9 hours on the Memorandum, charging Debtor $857.50 in fees, which is well-within the realm of reasonableness as counsel had to research, draft, and file the document. Therefore, this factor does not warrant an adjustment.

> v. **Whether the Attorney is Board Certified or Otherwise has Demonstrated Skill and Experience in the Bankruptcy Field and *Johnson* Factor No. 9**

The parties do not dispute that Debtor's counsel of record, has practiced bankruptcy law in Kansas City for over 20 years, possesses a wide range of experience in bankruptcy litigation, and has a reputation for quality work. However, Pray does argue that the associate attorney's fees should be excluded because the associate does not practice bankruptcy law.[28] But, according to the time entries, the associate attorney assisted and consulted with counsel of record, and charged a much lower hourly rate, which is a more economical arrangement and one that is common in the legal profession. Therefore, this factor does not warrant an adjustment.

> vi. **Whether the Compensation is Reasonable based on the Customary Compensation Charged by Comparably Skilled Practitioners in Other Cases**

Based on this Court's experience in non-bankruptcy matters, the rates charged by Debtor's counsel and staff are reasonable and comparable to the rates of similarly experienced attorneys and staff for non-bankruptcy work in the Kansas City Metro area. This factor does not warrant an adjustment.

---

[28] Similarly, Pray's attorneys are also not bankruptcy practitioners; it is the Court's impression that they primarily practice in state court dealing with family law issues.

11

Because the factors do not indicate that an adjustment to the lodestar calculation is warranted, the Court will award $13,076.12 in attorney's fees to Debtor. The Court now turns to whether Pray's conduct warrants an award of punitive damages.

### B. Punitive Damages

To recover punitive damages, Debtor must show that Pray's conduct amounts to more than a willful stay violation.[29] There are two "tests" courts have considered when determining whether punitive damages are recoverable. The first is whether Pray acted with actual knowledge that he was violating a federally protected right or with reckless disregard of the protected right.[30] The second test includes a four-factor analysis where the Court will consider (1) the nature of the Pray's conduct; (2) Pray's ability to pay; (3) Pray's motives; and (4) provocation by Debtor.[31]

For the first test, Pray's argues that he "did not attempt to collect any property or allow any orders to be entered" that would impact Debtor's rights, which, he believes, shows that he did not act with reckless disregard.[32] Yet, this argument entirely misses the point. Pray's decision to file the amended motion in state court to prevent Debtor's discharge of the equalization judgment was made even after Pray was put on notice of the bankruptcy and given an opportunity to withdraw the motion. This amounted to a reckless disregard of Debtor's rights

---

[29] *Escobedo v. Davis (In re Escobedo),* 513 B.R. 605, 613 (Bankr. D. N.M. 2014).
[30] *Diviney v. Nationsbank of Tex. (In re Diviney*), 225 B.R. 762, 776 (10th Cir. BAP 1998).
[31] *Id.* at 777.
[32] Doc. 74, ¶ 13.

12

under the Bankruptcy Code. It is irrelevant that Pray's attempts to impact Debtor's rights were, largely, unsuccessful.

The first factor in the second test—the nature of Pray's conduct—weighs in favor of punitive damages. In addition to his conduct discussed above, Pray misrepresented to the state court that he was concurrently requesting stay relief from the bankruptcy court, leaving the false impression that he had or was obtaining authorization to proceed with his post-judgment motions.

More egregious, however, were Pray's bald allegations in the state-court motions of fraud, bad faith, or misconduct by Debtor in filing for bankruptcy relief. Both of Pray's state court motions were based upon the Kansas statutory procedural equivalent to Fed. R. Civ. P. 60(b)—K.S.A. § 60-260(b)(3) and (b)(6).[33] Subsection (b)(3) provides that "fraud . . . misrepresentation, or misconduct by an opposing party" is a ground for relief from a judgment, while subsection (b)(6) contains the catchall "any other reason that justifies relief." The Court is mindful here that Pray, as the judgment creditor, not the judgment debtor, was the party seeking relief. What was Debtor's fraud or misconduct on which Pray based his state-court motion and amended motion? Debtor simply filed a chapter 13 bankruptcy after the equalization judgment was entered. Though both parties were represented by

---

[33] The Court observes that under Kansas procedure, a post-judgment motion to alter or amend the judgment under K.S.A. 60-259(f) (2022 Supp.) was unavailable to Pray because the equalization judgment had been entered months before (September 13, 2023) and Pray filed his motions well outside the 28-day time limit for seeking relief under K.S.A. 60-259(f). That likely explains why Pray's motions were filed under K.S.A. 60-260(b)(3) and (b)(6) (2022 Supp.). A motion based on fraud can be filed up to a year after entry of the judgment and a motion under (b)(6) must be made within a reasonable time. *See* K.S.A. 60-260(c)(1). In the Court's view, the substance of Pray's motions is more akin to a motion to alter or amend the equalization judgment.

13

counsel in the divorce and the division of property was hotly litigated (including the equalization payment that Debtor was ordered to pay to Pray), Pray suggests he was hoodwinked by Debtor. However, Pray's counsel conceded at the hearing in this Court that Pray never sought spousal support or maintenance in the divorce case and had no evidence to support a claim of fraud or misconduct on the part of Debtor, other than Debtor's failure to pay the judgment and the act of filing bankruptcy. Despite this admission, Pray never retracted the (b)(3) fraud claim from the motions.

For the second factor, Debtor argues that Pray has the ability to pay her requested amount of punitive damages because he makes $120,000 per year. Pray did not refute Debtor's testimony; he did, however, claim that he could not afford to pay the full amount requested in damages, and his children would suffer hardship if he was forced to. Neither party presented any evidence of Pray's monthly expenses to show Pray's net income. In short, on this evidentiary record the Court cannot determine whether Pray could afford to pay the $10,000 sought in punitive damages. As the Debtor bears the burden of proof, this weighs against awarding punitive damages.

For the third (Pray's motive) and fourth (Debtor's provocation) factors, it is clear, based on the tenor of his motions, that Pray was motivated at least in part by anger upon realization that the $47,000 equalization judgment could be discharged in Debtor's bankruptcy. Such anger is not uncommon in domestic cases, but Pray did not simply go back to the divorce court and seek a domestic support order, which

14

would have been excepted from the stay,[34] but instead focused his efforts primarily on seeking to modify or set aside the equalization judgment to prevent its discharge in the bankruptcy. This factor weighs in favor of punitive damages.

As for Debtor's provocation, absent a showing of bad faith, the filing of bankruptcy does not constitute a provocation by Debtor. At the stay violation hearing, Pray's counsel conceded that he had no evidence of Debtor's bad faith or fraud in filing bankruptcy. The fourth factor weighs in favor of punitive damages.

Since Pray's conduct satisfies the first test and three of four factors in the second, the Court will award punitive damages. However, Debtor did not establish that Pray has the ability to pay the requested $10,000. In addition, both Pray and his counsel appear to have been relatively inexperienced with the process and laws of bankruptcy. Yet, after being made aware of the bankruptcy stay, Pray persisted in his efforts. Because of this, the Court finds punitive damages in the amount of $500 to be appropriate in these circumstances.

### IV.     Conclusion

For these reasons, the Court awards $13,076.12 in attorney's fees, $350 in lost income, and $500 in punitive damages to Debtor under § 362(k)(1). A separate judgment will be entered against Pray in the principal amount of $13,926.12.

IT IS SO ORDERED.

###

---

[34] *See* 11 U.S.C. § 362(b)(2)(A)(ii).